UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| SHIRLEY WILLIAMS, | : | |
| | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | |
| | : | Civil Action No. 06-cv-834 |
| v. | : | |
| | : | **MEMORANDUM OPINION &** |
| UNITED STATES ARMY CORPS OF | : | **ORDER** |
| ENGINEERS and THE BOROUGH | : | |
| OF NATIONAL PARK, | : | |
| | : | |
| Defendants. | : | |

This matter comes before the Court on the motion of Defendant United States Army Corps of Engineers ("Army Corps") for summary judgment pursuant to Fed. R. Civ. P. 56(b) and on the motion of Plaintiff Shirley Williams ("Williams") to amend the complaint pursuant to Fed. R. Civ. P. 15(a) & (c)(3). Defendant Army Corps also filed a motion to strike from the record certifications in support of Plaintiff's opposition brief for non-compliance with 28 U.S.C. § 1746 and as inadmissible under Fed. R. Evid. 702. The Court heard oral argument on the motions on July 24, 2007 and the record of those proceedings is hereby incorporated into the Court's opinion. For the reasons set forth on the record that day, as well as those given below, the Court will grant Plaintiff's motion to amend, grant Army Corps' motion to strike under Fed. R. Evid. 702, dismiss the Army Corps' motion for summary judgment, but grant dismissal under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, and dismiss Plaintiff's claim against Borough of National Park pursuant to 28 U.S.C. § 1367.

## I. Background

The United States Army Corps of Engineers is charged with developing and maintaining the United States' navigable waterways. (Olsen Declaration, Tab 1 at 3.)

Part of this operation entails the continuous dredging of the Delaware River, including the operation and maintenance of dredge disposal sites.  (Id. at ¶ 2.)  One of these sites is the National Park Contained Disposal Facility ("NPCDF") located in National Park, New Jersey.  (Id. at ¶ 3.)  The NPCDF is a 135-acre "single-cell" facility comprised of undeveloped property with contoured berms and dikes, sluices and sluice gates, and an open external drainage ditch abutting the north, east and south sides of the facility.  (Id. at ¶ 3.)  The Army Corps began using the NPCDF in 1961 as an opened, unconfined dredge disposal site.  (Id.)  In February 1971, the Army Corps acquired clear title to the NPCDF and thereafter began construction of the current dike and drainage ditch system configuration.  (Id. at ¶ 6.)  The dikes and outside berms at the NPCDF were modified again from 1985-1987, but no additional construction has occurred since then.  (Id. at ¶ 7.)

When dredged material is pumped into a containment facility, it consists of 85% water and 15% solids.  (Id. at ¶ 11.)  Water is discharged from the dredge through a sluice gate system while the solid material is left to dry, usually requiring one to two years. (Id.)  The NPCDF has not been used for active disposal of dredged material since 2001. (Id.)

Plaintiff Williams built her home outside the northeast corner of the NPCDF in 1976.  (Williams Certif. at ¶ 6.)  From that time until approximately 2003, Plaintiff had no problems with the Army Corps, nor any water infiltration in her home.  (Compl. at ¶ 12.)  However, in June of 2003, Plaintiff began to experience flooding in her basement, leading to damages in excess of $160,850.  (Id. at ¶ 17; Compl. at ¶ 55.)  Plaintiff has experienced ongoing flooding and moisture problems in her home since that time. (Compl. at ¶ 14.)

Williams attempted to determine the cause of the flooding through a number of channels including contacting the Army Corps, U.S. Representative Robert Andrews, then U.S. Senator Jon Corzine, and State Senator Sweeney.  (Williams Certif. at ¶¶ 24-25; Compl. at ¶ 19.)  Plaintiff also engaged the services of a civil engineer, Horace Albert Reeves ("Reeves"), to independently investigate the cause of the flooding.  (Compl. at ¶ 30.)  The Borough of National Park investigated the matter around July 2003 and determined that it was not the cause of the flooding.  (Reeves Certif., Exhibit B at ¶ 2(k).)  The Army Corps too investigated the matter and met with Williams on July 11, 2003 to inspect her home and the NPCDF.  (Id. at ¶ 2(l).)  After continued flooding, the Army Corps returned to the Williams home in August of 2003 and performed work in the drainage ditch behind her home.  (Id. at ¶¶  2(o)-2(p).)

When the flooding problem persisted, Plaintiff brought suit against the Army Corps and the Borough of National Park on February 22, 2006.  Defendant Army Corps filed a motion for summary judgment on December 19, 2006.  Plaintiff filed a motion to amend the Complaint on March 5, 2007.  Four days later, Army Corps filed a motion to strike.

## II. Analysis

### A. Rule 15(a) Motion to Amend

Rule 15(a) allows for leave to amend when "justice so requires."  Subsection c of Rule 15 provides for relation back of amendments to the date of filing to prevent statute of limitation issues.[1]  Rule 15(c) further provides that subsection(c)(3) is satisfied for

---

[1]Stating, in relevant part:

purposes of substituting the United States as a defendant if delivery or mailing of process is made on, among others, the United States Attorney General.

Plaintiff initially filed the Complaint on February 21, 2006, against the Army Corps claiming jurisdiction under 28 U.S.C. § 1346(b),[2] the Federal Torts Claims Act ("FTCA").  (Compl. at ¶¶ 2, 4.)  However, 28 U.S.C. § 2679(a) provides that § 1346(b) does not authorize suits against federal agencies in their own name.[3]  As a matter of law,

---

An amendment of a pleading relates back to the date of the original pleading when . . .

> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed. R. Civ. P. 15(c).

[2] Stating:

Subject to the provisions of chapter 171 of this title, the district courts . . . shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, accruing on and after January 1, 1945, for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

[3] Stating:

The authority of any federal agency to sue and be sued in its own name shall not be construed to authorize suits against such federal agency on claims which are cognizable under section 1346(b) of this title, and the remedies provided by this title in such cases shall be exclusive.

28 U.S.C. §  2679(a).

only the United States is a proper defendant under 28 U.S.C. § 1346.  See Continental Ins. Co. of N.J. v. United States, 335 F. Supp. 2d 532, 535 (D.N.J. 2004).  Accordingly, Plaintiff moved on March 6, 2007, to amend the Complaint to substitute the United States for the Army Corps as the proper defendant.  The attorneys for the Army Corps opposed the motion asserting that Plaintiff failed to make a showing that the amendment was permissible under Rule 15(c)(3) and furthermore, that the amendment was barred by 28 U.S.C. § 2401(b).[4]  (Army Corps Brief-March 9, 2007 at 1.)

Plaintiff's motion to amend will be granted in the interests of justice.  Generally, "leave to amend must . . . be granted unless equitable considerations render it otherwise unjust."  Arthur v. Maersk, Inc., 434 F.3d 196, 204 (3d Cir. 2006).  Factors that would justify denying a motion to amend include: undue delay, bad faith, and futility.  Id.  The Third Circuit has held that "prejudice to the non-moving party is the touchstone for the denial of an amendment."  Id. (citations omitted).

The record reflects that after filing the original Complaint, Plaintiff issued summons to the Army Corps, the United States Attorney, and the United States Attorney General on April 27, 2006.  (Docket Entry at #2.)  Plaintiff's action reasonably put the United States on notice that, but for a mistake in identifying the Army Corps as the

---

[4] Stating:

A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b).

defendant, it would have been sued.  See Fed. R. Civ. P. 15(c)(3).  Moreover, the

additional language of Rule 15(c) expressly provides that notice to the United States

Attorney General satisfies all of the amendment requirements of subsection (c)(3).  See

id.  To disallow Plaintiff's amendment would be unnecessarily harsh and in discord with

the Advisory Committee's intent for substituting the United States by amendment.  See

12A Charles Alan Wright et. al., Fed. Prac. & Proc. App. C at 177 (2d ed. 2007) (holding

denying relation back when substituting the United States where notice has been given

"is to defeat unjustly the claimant's opportunity to prove his case"); see also Williams v.

Army & Air Force Exchange Serv., 830 F.2d 27, 30 (3d Cir. 1987) (holding it is an

"irrefutable presumption" that if the Attorney General receives notice within statutory

period, no prejudice results to the United States in allowing amendment) (citing

Edwards v. United States, 755 F.2d 1155, 1158 (5th Cir. 1985)) .  Furthermore, Plaintiff

has not engaged in any undue delay, bad faith, or taken futile action.  Thus, Plaintiff's

motion is granted and the United States is substituted as the Defendant in this matter;

the Army Corps is hereby dismissed.[5]

**B. Army Corps' Motion to Strike**

**1) Motion to Strike under 28 U.S.C. § 1746**

Defendant Army Corps' motion to strike Plaintiff's certifications for failure to

comply with 28 U.S.C. § 1746 is denied.  Section 1746 provides that unsworn

declarations must be made under the penalty of perjury to be admissible in federal

---

[5] So as to avoid confusion, hereafter, the Defendant will still be referred to as "Army Corps" since it carried out the majority of the actions and motion practice in this matter.

court.[6]  Plaintiff's certifications were initially submitted with the following language: "I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are wilfully false, I am subject to punishment."  (See, e.g., Williams Certif. at 4.)  This statement comports with New Jersey Court Rule 1:4-4(b);[7] however, the failure of these statements to acknowledge the penalty of perjury would render them, if unmodified, inadmissible.  See United States v. Branella, 972 F. Supp. 294, 300 (D.N.J. 1997) (holding affidavit failure to acknowledge perjury makes inadmissible for summary judgment consideration); Cooper v. Cape May County Bd. of Soc. Servs., 175 F. Supp. 2d 732, 742 n.6 (D.N.J. 2001).

---

[6] Stating, in relevant part:

Wherever, under any law of the United States or under any rule, regulation, order, or requirement made pursuant to law, any matter is required or permitted to be supported, evidenced, established, or proved by the sworn declaration, verification, certificate, statement, oath, or affidavit, in writing of the person making the same . . . such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration, certificate, verification, or statement, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially, the following form . . . .

28 U.S.C. § 1746.

[7] Stating:

In lieu of the affidavit, oath or verification required by these rules, the affiant may submit the following certification which shall be dated and immediately precede the affiant's signature: "I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willingly false, I am subject to punishment."

N.J. R. Gen. App. R. 1:4-4(b).

Nevertheless, the Court will not grant Army Corps' motion to strike for failure to comport with 28 U.S.C. § 1746 .  In response to Army Corps' motion, Plaintiff submitted amended certification statements that included the relevant perjury language. (Plaintiff's Reply Brief-April 5, 2007 at Exhibits A-C.)  Army Corps' response to the amended submission was to merely respond to the irrelevance of the certifications, without objecting to the amendments in general.  (Army Corps Reply Brief-April 10, 2007 at 2-6.)  In general, "evidence should not be excluded on summary judgment on hypertechnical grounds."  Fowle v. C&C Cola, 868 F.2d 59, 67 (3d Cir. 1989).  Where the plaintiff has made an attempt to rectify a defect in pleadings, particularly when done before the district court, the amended pleadings should be allowed.  See id. (holding circuit court would not consider supplemented pleadings where defendant raised objection in district court and plaintiff did nothing to correct the error).  Likewise here, to disallow Plaintiff's amended certifications on technical grounds, particularly where she attempted to rectify the error before any judgment had been rendered on the issues, would not be in the interests of justice.  Therefore, the Court will not grant Army Corps' motion to strike Plaintiff's certifications for failure to comply with 28 U.S.C. § 1746.

### 2) Motion to Strike under Fed. R. Evid. 702

The Court will grant Army Corps' motion to strike the Reeves Reports as inadmissible, however, under Fed. R. Evid. 702.  Rule 702 has two major requirements: "qualifications" and "reliability."  Oddi v. Ford Motor Co., 234 F.3d 136, 145 (3d Cir. 2000).  Qualifications are interpreted "liberally."  Id.  When expert testimony is offered,

however, "the trial judge must determine at the outset, pursuant to Rule 104(a),[8] whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993). The trial court judge acts as a "gatekeeper" of admissible of evidence. Id. at 597. In the Third Circuit, the trial court satisfies this responsibility by subjecting the evidence to eight factors: "(1) whether a method consists of a testable hypothesis; (2) whether the method has been subjected to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to the methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the non-judicial uses to which the method has been put." Oddi, 234 F.3d at 145 (citing In re Paoli Railroad Yard PCB Litigation, 35 F.3d 717, 742 (3d Cir. 1994)).

Furthermore, the Third Circuit has "long stressed the importance of in limine hearings under Rule 104(a)" when determining reliability of evidence under Rule 702 and Daubert. Padillas v. Stork-Gamco, Inc., 186 F.3d 412, 417 (3d Cir. 1999). That a plaintiff fails to move for such a hearing is irrelevant since it is the court's "independent

---

[8] Stating, in relevant part:

Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to provisions of subdivision (b).

Fed. R. Evid. 104(a).

responsibility" to properly manage complex litigation and since a plaintiff has no advanced notice of the court's direction on a Rule 702 motion.  <u>Id.</u>  Here, Plaintiff has submitted extensive reports as evidence of the Army Corps' alleged negligence.  (<u>See</u> Reeves Certif., Exhibits A-D.)  Army Corps has only indirectly objected to Reeves' qualifications to render his opinion and there only parenthetically.  (<u>See</u> Army Corps Brief-March 9, 2007 at 5, stating Reeves has "no evident experience or training in matters of hydro-geology.")  The main thrust of Army Corps' objections to the Reeves Reports are (1) that they are irrelevant to a 28 U.S.C. § 2680 determination, (<u>id.</u> at 5: "None of this serves to rebut or undermine the presumption that [the Army Corps' actions] . . . are public policy-based."), and (2) that the reports are based on unsupported conclusory language rather than sound reasoning, (<u>id.</u>: "The essence of those reports is nothing more than a factually unsupported argument that water is seeping through the toes of the dikes . . . .").

Upon review of the Reeves Reports, the Court can find no clear indicia that Reeves' qualifications nor his methodology satisfies the eight reliability factors for evidence under Rule 702.  <u>See</u> <u>Oddi</u>, 234 F.3d at 145.  As an initial matter, the Court is unclear on how a civil engineer, albeit with significant experience, is qualified as a matter of law to render an expert opinion on hydro-geologic matters.[9]  Moreover, the

---

[9]See <u>Daubert</u>, 509 U.S. at 597:

We recognize that, in practice, a gatekeeping role for the judge, no matter how flexible, inevitably on occasion will prevent the jury from learning of authentic insights and innovations.  That, nevertheless, is the balance that is struck by the Rules of Evidence designed not for the exhaustive search for cosmic understanding but for the particularized resolution of legal disputes.

Court's review of the three reports yields several examples of the so-called "unsupported" conclusions to which the Army Corps objects. (See Reeves Certif., Exhibit B at 4, ¶ 3(d): a pond outside the berm suggests seeping; at 5, ¶ 3(c): seepage from the berm raised the water table; Exhibit C at 2, ¶ 2(c): the containment facility has blocked the drainage path; at 2, ¶2 (e): the ditches have improper grading; at 4, ¶ 4(a): design failure caused water blockage; Exhibit D at 2, ¶ 2(b): increased height of berm will cause increased seepage; at 3, ¶ 2(f): design of berm structure not policy based.)

For the Court's purposes, these conclusions are of concern not because of what they assert, see Daubert, 509 U.S. at 595 (holding the court's focus for a Rule 702 inquiry "must be solely on the principles and methodology, not the conclusions they generate"), but rather because they are devoid of any scientific or technical methodology that was used to generate them. See Oddi, 234 F.3d at 145-46 (citing Kannankeril v. Terminix Int'l Inc., 128 F.3d 802, 806 (3d Cir. 1997) (holding "The test of admissibility is not whether a particular scientific opinion has the best foundation or whether it is demonstrably correct. Rather, the test is whether the 'particular opinion is based on valid reasoning and reliable methodology.'"). Indeed, Plaintiff conceded at oral argument that Reeves had in fact conducted no testing, but rather formulated his hypotheses based on principles of engineering and his own observations. Given this admission, the need for an in limine evidentiary hearing is eviscerated since the Reeves Reports cannot withstand scrutiny under the Daubert factors. Therefore, the Court will grant Defendant Army Corps' motion to strike the Reeves Reports as inadmissible under Fed. R. Evid. 702.

**C. Discretionary Immunity under 28 U.S.C. § 2680**

The very heart of the matter before the Court is whether the Army Corps is entitled to discretionary immunity under § 2680(a)[10] for the design and maintenance of the NPCDF.  Application of "discretionary immunity" under § 2680 requires a two part inquiry.  Mitchell v. United States, 225 F.3d 361, 363 (3d Cir. 2000).  "First, a court must determine whether the act involves an 'element of judgment or choice.'"  Id. (citing United States v. Gaubert, 499 U.S. 315, 322 (1991)).  This determination does not include decisions where a "'federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow . . . ."  Id. (citing Berkovitz v. United States, 486 U.S. 531, 536 (1988)).  "Second, even if the challenged conduct involves an element of judgment, the court must determine 'whether that judgment is of the kind that the discretionary function was designed to shield.'"  Id. (citing Gaubert, 499 U.S. at 322-23).  The court's focus "'is not on the agent's subjective intent in exercising the discretion conferred by the statute, but on the nature of the actions taken and on whether they are susceptible to policy analysis.'"  Id. (citing Gaubert, 499 U.S. at 325).  Application of the discretionary immunity test is "fact-specific" to each case.  Id. at 365.

_____

[10]Stating, in relevant part:

> The provisions of this chapter and section 1346(b) of this title shall not apply to–
> (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the exercise of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680.

### 1) 28 U.S.C. § 2680 and Rule 56(b) versus Rule 12(b)(1)

As an initial matter, the proper procedural posture of this case must be clarified. Army Corps filed a Rule 56(b) motion seeking summary judgment.  (Notice of Motion at 2).  Thereafter, in the supporting brief, Army Corps repeatedly conveyed to the Court that it lacks subject matter jurisdiction pursuant to § 2680.  (Army Corps Brief-December 19, 2006 at 3, 7, 19, 22.)  Summary judgment is not the appropriate procedural posture of the immunity claim, however.  Claims under § 2680 are appropriately styled as lack of subject matter jurisdiction claims under Rule 12(b)(1). Gibson v. United States, 457 F.2d 1391, 1392 (3d Cir. 1972) (holding "any objection raised by the defendant which is based on the exceptions listed in § 2680 goes to the issue of jurisdiction over the subject matter and hence to Rule 12(b)(1)"); Mundy v. United States, 983 F.2d 950, 952 (2d Cir. 1993) (holding where a claim falls within an exception of § 2680, the court lacks subject matter jurisdiction).  That Army Corps failed to specifically raise a Rule 12(b)(1) objection is without import since the Court can dismiss an action *sua sponte* where it appears that it lacks subject matter jurisdiction. See Fed. R. Civ. P. 12(h)(3).  Therefore, the Court will review Plaintiff's claims for subject matter jurisdiction pursuant to Rule 12(b)(1), technically dismissing Defendant Army Corps' motion for summary judgment pursuant to Rule 56(b), but accepting the arguments made therein.

### 2) Discretionary Immunity and Categories of Negligence

Plaintiff's Complaint appears to raise three categories of negligence: negligent design, (Compl. at ¶ 72), negligent violation of established regulations in design, (id. at ¶¶ 67-68), and negligent maintenance of the berms and drainage ditches, (id. at ¶ 78).

13

After review of relevant discretionary immunity tests and the facts in issue, the Court holds that the United States is entitled to discretionary immunity for any and all acts related to the placement and design of the NPCDF, negligent violation of regulations, and for any claims related to negligent maintenance.

### a) Negligent Design

The policy behind discretionary immunity is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" Gaubert, 499 U.S. at 325 (citing Berkovitz, 486 U.S. at 537).  Defendant Army Corps points to 33 U.S.C. §§ 1[11], 419a[12], and 622[13] as express indicia of Congress' intent to give the Army Corps discretion in the

[11] Stating, in relevant part:

It shall be the duty of the Secretary of Army to prescribe such regulations for the use, administration, and navigation of the navigable waters of the United States as in his judgment the public necessity may require for the protection of life and property, or of operations of the United States in channel improvement, covering all matters not specifically delegate by law to some other executive department.

33 U.S.C. § 1.

[12]Stating:

The Secretary of the Army, acting through the Chief of Engineers, shall utilize and encourage the utilization of such management practices as he determines appropriate to extend the capacity and useful life of dredged material disposal areas such that the need for new dredged material disposal areas is kept to a minimum.  Management practices authorized by the section shall include, but not be limited to, the construction of dikes, consolidation and dewatering of dredged material, and construction of drainage and outflow facilities.

33 U.S.C. § 419a.

[13]Stating, in relevant part:

(a) The Secretary of the Army, acting through the Chief of Engineers. . ., in carrying out projects for improvement of rivers and harbors . . . shall, by

design and placement of dredge facilities.  (Army Corps Brief-December 19, 2006 at 10-13.)  The Supreme Court has held that "when established government policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion."  Gaubert, 499 U.S. at 324.  Furthermore, "for a complaint to survive a motion to dismiss, it must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be grounded in policy of the regulatory regime."  Id. at 324-25.[14]  This holding compels the Court to examine the statutes at issue to determine (1) whether the Army Corps was given judgment or choice under the applicable statutes in designing the NPCDF and (2) if so, whether the judgment exercised was of the kind discretionary immunity is designed to shield.  See Mitchell, 225 F.3d at 363.

---

contract or otherwise, carry out such work in the manner most economical and advantageous to the United States.

33 U.S.C. § 622.

[14]This holding seems to suggest that the burden of proof is on the plaintiff in FTCA actions.  However, there is some division among the circuits as to what the proper burden allocation scheme may be.  See Smith v. United States, 943 F. Supp. 159, 168 (D.R.I. 1996) (articulating the circuit split); see also Ugo Colella & Adam Bain, The Burden of Proving Jurisdiction Under the Federal Torts Claim Act: A Uniform Approach to Allocation, 67 Fordham L. Rev. 2859 (1999).  Given the Court's determination that this matter will proceed as a Rule 12(b)(1) motion, the burden of persuasion is on Plaintiff.  See Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406,  1409 (3d Cir. 1991).  This means furthermore that "no presumptive truthfulness attaches to plaintiff's allegations," and the Court will determine for itself if the plaintiff has satisfied a jurisdictional claim.  Mortensen v. First Fed'l Sav. & Loan Ass'n, 549 F.2d 884, 891 (3d Cir. 1977).  The Court is free to weigh the evidence to determine if it has subject matter jurisdiction.  Id.

A plain reading of the statutes at issue reveals clear indicia of Congressional intent to confer discretion on the Army Corps.  See 33 U.S.C. § 1 (stating the Secretary of the Army may "*in his judgment*" promulgate regulations for navigable waterways) (emphasis added); 33 U.S.C. § 419a (stating the Secretary of the Army, acting through the Chief of Engineers, shall use practices as "*he determines appropriate*" to extend the life of dredge facilities) (emphasis added); 33 U.S.C. § 622 (stating the Secretary of the Army acting through the Chief of Engineers shall carry out dredging operations "*in a manner most economical and advantageous to the United States*") (emphasis added). Furthermore, the evidence in the record reveals that the judgment exercised by the Army Corps in designing the NPCDF was of the kind discretionary immunity was designed to protect.  David Olson, the Assistant Chief of the Operations Division for the Philadelphia District of the Army Corps of Engineers, testified that the original construction on the dike and sluice structure at the NPCDF took place in 1971.  (Olsen Declaration at ¶¶ 1, 8.)  He further testified that at that time, no regulations or policy requirements existed for how those structures were to be built.  (Id.)  Moreover, Olsen testified that the construction and maintenance of dredge facilities prior to the promulgation of guidelines in 1980 was guided by "purely discretionary judgment based on accepted sound engineering principles."  (Olsen Declaration at ¶ 8.)  Based on the evidence, the Court agrees.

In the absence of specific directives from Congress, the Court can find no grounds for holding anything other than the design of the NPCDF was completed pursuant to a

discretionary grant from Congress, which is immune from suit.[15]  Even if Plaintiff's allegation that the NPCDF was negligently designed were supportable, which the Court doubts given that the structure has existed without any alleged problem from 1971 through 2003, that claim too would be barred by § 2680.  See General Public Utilities Corp. v. United States, 745 F.2d 239, 245 (3d Cir. 1984) (holding where a government employee negligently performs a discretionary function, "the exemption remains applicable even though the activity constitutes abuse of discretion").  Therefore, all claims as related to negligent design are dismissed from this action pursuant to Rule 12(b)(1).

### b) Negligent Violation of Design Regulations

Negligent violation of design regulations claims under Rule 12(b)(1) will also be dismissed.  Where a federal statute or policy specifically prescribes a course of action, deviation by a Government employee from that standard is not protected by discretionary immunity.  Mitchell, 225 F.3d at 363.  However, "if a regulation mandates particular conduct, and an employee obeys the direction, the Government will be protected because the action will be deemed in furtherance of the policies which led to the promulgation of the regulation."  Gaubert, 499 U.S. at 324.  Plaintiff has alleged that

---

[15]Moreover, a review of the limited case law on dredging activity further supports discretionary immunity.  See Payne v. United States, 730 F.2d 1434, 1436-37 (11th Cir. 1984) (holding plaintiff's claim for damages where house fell into river because of dredging was barred by discretionary immunity); United States v. Gregory, 300 F.2d 11, 13 (10th Cir. 1962) (holding plaintiff's damages where commercial ponds dried up because of dredging were barred by FTCA); Dolphin Gardens, Inc. v. United States, 243 F. Supp. 824, 826 (holding that the decision to dredge is a discretionary function within § 2680; F & M Shaefer Brewing Co. v. U.S., 121 F. Supp. 322, 323 (E.D.N.Y. 1954) (holding same).

the Army Corps failed to follow its own established policies relating to proper disposal of dredged materials.  (Compl. at ¶ 67.)  This allegation is supported by Reeves' expert opinion[16], which states that "the Army deviated from accepted engineering standards and their own published standards in its failure to maintain the Disposal Site . . . ." (Reeves Certif., Exhibit B at ¶ 5(b).)

The Court finds, however, that Plaintiff has failed to produce any evidence as to what specific agency procedure or engineering principle the Army Corps has violated, relying exclusively on the fact that there is a lake inside the structure and a pond outside of it as evidence of a breach of regulations.  (See id. at ¶¶ 5(a), 5(b).)  In the Court's view, the Army Corps was granted wide discretion in determining and implementing dike and sluice procedures, see 33 U.S.C. § 419(a), which precludes a determination that the Army Corps violated a specific regulation or directive.  Moreover, the Court is persuaded by the fact that there were no policies of any kind until October 1980, (Olsen Declaration at ¶ 8), and the Plaintiff has failed to show any specific violation of those.  Thus, the Court lacks subject matter jurisdiction over a claim of negligent violation of regulations.

### c) Negligent Maintenance

The Court also does not have jurisdiction over Plaintiff's claims arising out of negligent maintenance of the NPCDF.  Section 2680 jurisprudence reveals that an agency's discretionary immunity is not boundless.  See Mitchell, 225 F.3d at 364 (noting "some courts have held that the agency decision went beyond the ambit of appropriate discretion when the agency ignored blatant safety hazards that could have been repaired

_____

[16]Although the Reeves Reports are inadmissible, the Court will reference them here to thoroughly explain discretionary immunity.

through routine periodic maintenance mandated by explicit policy").  Courts have found that the discretionary immunity exception does not apply where the decision to not repair was not based in public policy rationale or was not of the type intended for Congressional protection.  See id. at 364-65 (citing ARA Leisure Services v. United States, 831 F.2d 193, 195 (9th Cir. 1987) (holding National Park Service liable where bus fell off poorly maintained road); Gotha v. United States, 115 F.3d 176, 181 (3d Cir. 1997) (holding Navy liable for accident on stairway where government "failed to articulate a public policy rationale" for failure to provide handrail); Cestonaro v. United States, 211 F.3d 749, 757 (3d Cir. 2000) (holding National Park Service liable where no grounding in policy objectives for failure to provide adequate lighting)); see also E. Rittner & Co. v. Dep't of the Army, Corps of Eng'rs, 874 F.2d 1236, 1241 (8th Cir. 1989) (holding Army Corps liable for failure to maintain drainage ditches in flood control project).  However, where a failure to repair involves a discretionary decision based in public policy rationale, the failure is barred from suit.  Mitchell, 225 F.3d at 365 (citing Cope v. Scott, 45 F.2d 445, 451 (D.C. Cir. 1995)).

The evidence reveals that the Army Corps does have certain regulations regarding maintenance of containment facilities.  (Army Corps Brief-December 19, 2006, Tab 2 at Part IX.)  Nevertheless, the Supreme Court directive as it applies to discretionary immunity is clear: "when established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be *presumed* that the agent's acts are grounded in policy when exercising that discretion."  Gaubert, 499 U.S. at 324 (emphasis added).  As established above, under 33 U.S.C. §§ 1, 419a, and 622, Congressional intent to grant the Army Corps wide discretion in the placement and maintenance of dredge facilities is clear.

The burden then shifts to the Plaintiff to "allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." Id. at 324-25.  Given that Plaintiff has offered only inadmissible evidence to even tangentially refute the Army Corps discretionary immunity, the Court is required to presume that maintenance of the NPCDF is grounded in policy, and is therefore immune from suit.  Thus, the Court lacks jurisdiction over Plaintiff's claims of negligent maintenance.

**D. Individual Claims**

For the reasons articulated above, Army Corps is immune from suit as to all claims against it arising from its actions regarding the NPCDF.  Thus, all Plaintiff's claims (Negligence, Abnormally Dangerous Activity, Nuisance, Taking, Inverse Condemnation, and Violation of the Clean Water Act) against the Army Corps are beyond the Court's jurisdictional reach and are dismissed pursuant to Rule 12(b)(1).  However, as there are additional reasons for dismissing the claims of Taking, Inverse Condemnation, and Violation of the Clean Water Act, the Court will elaborate on them.

**1) Taking**

Plaintiff claims in Count Four of the Complaint that because the Army Corps has allowed water to seep onto her property, the destruction caused by this flooding constitutes a taking.  (Compl. at ¶¶ 80-83.)  Government liability for flooding must be distinguished between takings and "mere" torts.  Miller v. United States, 583 F.2d 857, 863 (6th Cir. 1978).  When the Government permanently takes over land, such as by impounding water behind a dam, that is a taking.  Id. (citing United States v. Dickinson, 331 U.S. 745 (1947); United States v. Cress, 243 U.S. 316 (1917); Pumpelly v. Green Bay

20

Co., 80 U.S. (13 Wall.) (1871)).  However, when the Government merely causes damage

to property,  such as by the release of water from a dam or by changing flood patterns

through the construction of levees, the flooding is "at most a tort."  Id.  This is so

because the Government's action results in only temporary rather than permanent

flooding, or alternatively, the flooding can be described as a "consequential and

incidental" result of the Government's action rather than a "'direct' appropriation of

land."  Id. (citing Danforth v. United States, 308 U.S. 271, 275 (1939); Sanguinetti v.

United States, 264 U.S. 146, 149-50 (1924); John Horstmann Co. v. United States, 257

U.S. 138, 145-46 (1921); Jackson v. United States, 230 U.S. 1, 23 (1913)).  In determining

whether the action was a taking or a tort, the court considers "whether the submersion

of the land was intended or contemplated by the Government as a necessary part of its

plans, and whether similar although possibly less severe flooding would have occurred

in any case."  Id. (citations omitted).

Plaintiff's claim fails to make any assertion that the flooding on her land was the

intended result of the NPCDF construction.  Quite the contrary, Plaintiff's evidence

makes clear that the intent was not to impound water within the structure, but rather to

allow it to drain.  (See Reeves Certif., Exhibit D at ¶ 3(b): "If the NPCDF had been

designed and constructed to drain fully, the rise in the ground water table may have

been avoided . . . .")  As a matter of law, the Army Corps has not taken Plaintiff's land

because the flooding, even if it could be proven to be the Army Corps' fault and not

subject to discretionary immunity, is at best a consequential and incidental result of the

dredging operation.  See Miller, 583 F.2d at 863.

**2) Inverse Condemnation**

Plaintiff claims in Count Five of the Complaint that the recurring and permanent flooding of her property is a taking, but no formal condemnation proceedings have begun.  (Compl. at ¶¶ 85-87.)  In a claim for inverse condemnation, "a landowner is seeking compensation for a *de facto* taking of his or her property."  Greenway Dev. Co. v. Paramus, 750 A.2d 764, 767 (N.J. 2000) (citing Pinkowsi v. Township of Montclair, 691 A.2d 837, 845 (N.J. Super. Ct. App. Div. 1997)).  "'[A] property owner is barred from any claim to a right to inverse condemnation unless deprived of all or substantially all of the beneficial use of the totality of his property as the result of excessive police power regulation.'" Id. (citations omitted).  "'[N]ot every impairment of value establishes a taking.'" Id. (citations omitted).  "'To constitute a compensable taking, the land owner must be deprived of all reasonably beneficial use of the property.'" Id. (citations omitted).  Furthermore, "the plaintiff-land owner [must] show that any deprivation of the beneficial use of his property is the result of the exercise of government authority and that the property has in fact been impaired."  Pinkowski, 691 A.2d at 846.

Plaintiff's claim only appears to assert that the basement of the home is subject to flooding and damage, (Williams Certif. at ¶¶ 18-20), which is something considerably less than being deprived of "all reasonably beneficial use of the property."  See Greenway, 750 A.2d at 767.  Furthermore, the only "police power" the Court can find that was exercised in this matter was the decision to build the NPCDF.  Any claim relating to that decision is, of course, immune from suit under § 2680 as discussed at length above.

### 3) Violation of Clean Water Act

The sixth count of the Complaint alleges Violation of the Clean Water Act. Chapter 33, section 1365 provides for a private cause of action for violation of the Clean Water Act.[17]  Subsection (b)(1)(A) requires 60 days notice to the Administrator, to the State in which the alleged violation occurs, and to any alleged violator of the standard. Such notice "is a jurisdictional prerequisite."  Public Interest Research Group of New Jersey, Inc. v. Widnall, 57 F.3d 1179, 1189 n.15 (3d Cir. 1995).

The Defendant's evidence, which the Court can review for Rule 12(b)(1) purposes, see Mortensen, 549 F.2d at 891, reflects that Phyllis Feinmark, the Branch Chief of the Water and General Law Branch of the Office of Regional Counsel in the United States Environmental Protection Agency's ("USEPA") New York office, testified that she has received no notice of Williams' suit under the Clean Water Act.  (Feinmark Declaration at ¶¶ 1, 3.)  Ms. Feinmark testified that she receives all notices of Clean Water Act claims under § 1365 within the jurisdiction of the USEPA in Region 2, which covers New Jersey.  (Id. at ¶ 2.)  Furthermore, Maria Kolokithias, an attorney for the Army Corps at the Office of Counsel in the Philadelphia District, testified that she too has received no notice of a § 1365 claim against the Army Corps.  (Kolokithias Declaration at ¶¶ 1, 3.)

---

[17]Stating, in relevant part:

Except as provided in subsection (b) of this section and section 1319(g)(6) of this title, any citizen may commence a civil action on his own behalf–
    (1) against any person (including (I) the United States, and (ii) any other governmental instrumentality or agency. . .) who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation . . .
The district courts shall have jurisdiction . . . to enforce such an effluent standard or limitation . . . .

33 U.S.C. § 1365.

Ms. Kolokithias testified that she receives notice of all such claims made against the Army Corps within the Philadelphia District, which includes New Jersey.  (Id. at ¶ 2.)

Plaintiff only offered as proof of compliance with § 1365(b)(1)(A) that she contacted the Army Corps on July 15, 2003, via Thomas Groff, Project Engineer. (Maska Certif. at ¶ 3.)  However, even if this were sufficient notice to the Army Corps, the record is still devoid of notice to the USEPA or the appropriate New Jersey official.  Under these circumstances, the Court is without jurisdiction under § 1365 to hear this claim.

**E. Supplemental Jurisdiction over the Borough of National Park**

Finally, because there are no federal claims over which this Court has jurisdiction, Plaintiff's remaining claims against Borough of National Park will be dismissed; the interests of judicial economy, convenience, or fairness to the litigants do not warrant review of those claims in this forum.  See Growth Horizons, Inc. v. Delaware County, Pa., 983 F.2d 1277, 1284 (3d Cir. 1993); 28 U.S.C. § 1367(c)(3) ("The district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if–(3) the district court has dismissed all claims over which it has original jurisdiction . . . .").

### III. Conclusion

For the reasons given above, as well as those articulated on the record during oral argument on July 24, 2007,

IT IS HEREBY ORDERED this 2nd day of August 2007, that Plaintiff's motion to amend pursuant to Fed. R. Civ. P. 15(a) & (c) **[23]** is **GRANTED.**  As such, the United States is substituted as named defendant; Defendant Army Corps is dismissed from the suit pursuant to 28 U.S.C. § 2679(a).

IT IS FURTHER ORDERED that Defendant Army Corps' motion to strike pursuant to Fed. R. Evid. 702 **[25]** is hereby **GRANTED**.

IT IS FURTHER ORDERED that the motion for summary judgment, pursuant to Fed. R. Civ. P. 56, **[13]** is **DISMISSED**, but the claims of Negligence, Abnormally Dangerous Activity, Nuisance, Taking, Inverse Condemnation, and Violation of the Clean Water Act are hereby **DISMISSED** for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).

IT IS FURTHER ORDERED that the claims against Borough of National Park are **DISMISSED** pursuant to 28 U.S.C. § 1367, as the Court declines to assert supplemental jurisdiction over them.

_____

_____   /s/ Joseph H. Rodriguez
_____   JOSEPH H. RODRIGUEZ
                                                          U.S.D.J.

25